UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WHITFIELD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN HERNANDEZ, et al.,<br><br>　　　　Defendants. | Case No.: 1:13-cv-0724 - JLT<br><br>PRETRIAL ORDER<br><br>Deadlines:<br><br>Motions in Limine Filing: 10/30/15<br>Oppositions to Motions in Limine: 11/13/15<br>Hearing on Motions in Limine: 11/30/15, 10 a.m.<br><br>Trial Submissions: 11/30/15<br><br>Jury trial: 12/7/15, 8:30 a.m. |

In this action, Plaintiff claims Defendants violated his Fourth Amendment rights by searching his bedroom during a parole search associated with a cotenant. (Doc. 26)

**A.　JURISDICTION/ VENUE**

The Court has jurisdiction over the claims in this action pursuant to 29 U.S.C. § 626 and 28 U.S.C. § 1367(a). Further, Plaintiff's claims arise out of events that occurred in Kern County, California. Accordingly, venue is proper in the United States District Court for the Eastern District of California sitting in Bakersfield. *See* 28 U.S.C. § 1391.

**B.　JURY TRIAL**

Plaintiff did not include demand for jury trial in any of his complaints and is amenable to a bench

trial. (Doc. 8 at 7.)  Defendants have demanded a trial by jury.  (Doc. 39 at 4) Thus, trial will be by jury.

**C.     UNDISPUTED FACTS**

1. In May 2013, Plaintiff rented a room in a home at 305 Oakdale Drive, Bakersfield, California.

2. Plaintiff rented the room from Shirley Wells.

3. Ms. Wells owned the home at 305 Oakdale Drive.

4. In May 2013, Ms. Wells also leased a room in the home to her brother, Eddie Wells.

5. Eddie Wells was on parole in May 2013, and under the supervision of the California Department of Corrections and Rehabilitation's (CDCR) Division of Adult Parole Operations.

6. Eddie Wells's parole agreement specified that CDCR officials could conduct lawful random parole searches of his residence.

7. In May 2013, Defendant Aguilera worked for CDCR as a Parole Agent I in the Bakersfield office.

8. On May 1, 2013, Defendant Aguilera visited the home at 305 Oakdale Drive to conduct a lawful random parole search of the premises.

9. On that day, Defendant Aguilera inspected all areas of the residence except for two bedrooms, which were locked.

10. Eddie Wells accompanied Defendant Aguilera as she performed the parole search on May 1, 2013.

11. When Defendant Aguilera asked Eddie Wells if she could look inside the two locked bedrooms, Mr. Wells told her that he did not have keys to the bedrooms and that they did not belong to him.

12. In response, Defendant Aguilera told Mr. Wells that she would return to the home the following week, and that she would need to look inside the bedrooms.

13. The next day, Plaintiff and Shirley Wells went to the Division of Adult Parole Operations' Bakersfield Office, and they spoke to Defendant Hernandez.

14. In May 2013, Defendant Hernandez worked as a Supervising Parole Agent III in the Bakersfield office.

15. In May 2013, Hernandez served as a second-level supervisor to Agent Aguilera.

16. When Hernandez talked with Plaintiff and Shirley Wells, he explained to them that it was standard practice for parole agents to inspect all rooms of a home the first time the agent performed a site inspection at a parolee's residence.

17. Defendant Hernandez also explained the various security reasons why this practice was in place.

18. For his part, Plaintiff explained to Hernandez all of the reasons that, in his view, any search of Plaintiff's bedroom would violate his privacy rights under the Fourth Amendment.

19. On May 10, 2013, Defendant Aguilera returned to the home at 305 Oakdale Drive for a follow-up parole search.

20. Defendant Aceves accompanied Defendant Aguilera for this second parole search.

21. With the exception of the two locked bedrooms, Aguilera and Aceves performed a visual inspection throughout the residence, as Defendant Aguilera had done nine days prior.

22. Defendant Aguilera asked Plaintiff if she could conduct a visual inspection of his bedroom area.

23. Defendants Aguilera and Aceves performed a visual inspection of Plaintiff's bedroom area.

**D.  DISPUTED FACTS**

All other facts are in dispute, including:

1. Whether Plaintiff consented to a search of his bedroom on May 10, 2013.

2. What was said between Plaintiff and Defendant Aguilera at the threshold of his bedroom on May 10, 2013.

3. What Defendant Aceves was wearing during the parole search on May 10, 2013.

4. Whether Aguilera and Aceves threatened or coerced Plaintiff into allowing them to perform a visual inspection of his bedroom at 305 Oakdale Drive.

5. Whether Aguilera or Aceves touched any of Plaintiff's belongings during their inspection of his bedroom on May 10, 2013, or whether their search was limited to a visual inspection.

**E.     DISPUTED EVIDENTIARY ISSUES[1]**

1. Whether Plaintiff consented to a visual inspection of his bedroom on May 10, 2013.

2. Whether a search warrant was required before Aguilera and Aceves conducted a visual inspection of Plaintiff's bedroom on May 10, 2013.

3. Whether any of the three Defendants conspired to violate Plaintiff's rights.

4. The parties do not dispute that Plaintiff maintained a reasonable expectation of privacy in the bedroom that he rented at 305 Oakdale Drive, but dispute the scope of that reasonable expectation of privacy.

5. Whether Aguilera and Aceves's inspection of Plaintiff's bedroom exceeded Plaintiff's reasonable expectation of privacy in his bedroom area.

6. Whether Aguilera and Aceves's inspection of Plaintiff's bedroom area violated the California Parole Manual.

7. Whether Plaintiff suffered any harm as a result of any Defendants' conduct.

8. Whether actions taken by any of the three Defendants' were malicious, oppressive, or in reckless disregard of Plaintiff's rights.

**F.     RELIEF SOUGHT**

Plaintiff seeks compensatory damages in the amount of $25,000 per defendant, general[2] damages in the amount of $25,000 per defendant, punitive damages, attorney's fees, costs related to the lawsuit, and any other relief to which she may be entitled. (Doc. 26 at 6.) Notably, Plaintiff is representing himself and, therefore, is not entitled to an award of attorney's fees. Defendants seek judgment in their favor and an award of costs.

///

///

---

[1] While the parties offer the following list as disputed evidentiary issues, none are. Rather they appear to be disputed factual issues and/or disputed legal issues.

[2] Compensatory damages are made up of general damages and special damages. Special damages are those that arise as a consequence of the alleged events, such as property damage or doctor bills incurred as a result of physical injuries. General damages are designed to compensate a injured person for intangible injuries such as pain and emotional suffering. Thus, It is appears Plaintiff is seeking special damages in the amount of $25,000 per defendant and general damages in the same amount.

**G.     POINTS OF LAW**

**1.     The Fourth Amendment**

The Fourth Amendment prohibits government officials from conducting warrantless searches of areas in which a person has a reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 351 (1967).  However, a warrant is not required where the person voluntarily consents to the search by the officers. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Consent must be "freely and voluntarily given." Id. at 222.

Consent is validly given where "that there was no duress or coercion, express or implied" and that the consent was "'unequivocal and specific' and 'freely and intelligently given.'" United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir.1990) (quoting United States v. Page, 302 F.2d 81, 83-84 (9th Cir.1962) (footnotes omitted)). Because the sanctity of the home is at the "very core" of the Fourth Amendment, courts should be reluctant to infer consent in the context of home searches. Shaibu, at 1426.  "[M]ere acquiescence to a claim of lawful authority is not sufficient" to demonstrate valid consent. Id.

To determine whether the consent was free and voluntary, "[t]he proper inquiry 'is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." United States v. Drayton, 536 U.S. 194, 202 (2002) quoting Florida v. Bostick, 501 U.S. 429, 436 (1991). To evaluate whether the consent was voluntary, the trier of fact must consider the totality of the circumstances.  Schneckloth, 412 U.S.at 219.

In addition, where government officials have probable cause to believe the parolee—with search terms—resides at the home to be searched, the Constitution is not offended by a warrantless search. Motley v. Parks, 432 F.3d 1072, 1079 (9th Cir. 2005) overruled on other grounds in United States v. King, 687 F.3d 1189 (9th Cir. 2012).  However, this does not authorize a wholesale search of the parolee's home. People v. Woods, 21 Cal.4th 668, 681 (1999) (citing United States v. Matlock, 415 U.S. 164 n. 7 (1974)). Instead, the searching officers must have a warrant or "reasonable suspicion" to conclude that the parolee has either sole or joint control over the areas in the home to be searched. United States v. Bolivar, 670 F.3d 1091, 1096 (9th Cir.2012) (citing United States v. Davis, 932 F.2d 752, 758 (9th Cir.1991)).

**2.     Punitive Damages**

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2009). The jury must find that the defendant's conduct is "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1986); *see also Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994).

**H.     ABANDONED ISSUES**

None

**I.     WITNESSES**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiffs' Witness List:**

1.   Steven Whitfield
2.   Eddie Wells
3.   Shirley Wells
4.   Mr. Martinez[3]

**Defendant's Witness List:**

1.   John Hernandez
2.   Lisa Aceves
3.   Donnette Aguilera

///

---

[3] Mr. Martinez is a current or retired employee of the Division of Parole. Mr. Delgado will determine Mr. Martinez's first name and his employment status with the Division of Parole as soon as possible and communicate this information to Mr. Whitfield. If he decides to pursue subpoenaing Mr. Martinez, Mr. Whitfield can obtain a subpoena on the Court's website at http://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/. He must submit the subpoena to the Clerk if the Court (at the Court's Fresno location) for signature prior to having it served.

**J.  EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

**Plaintiff's Exhibits**

1. Plaintiff's Interrogatories to Defendant Aguilera
2. Defendant Aguilera's Responses to Plaintiff's Interrogatories
3. Plaintiff's Request for Admissions to Defendant Aguilera
4. Defendant Aguilera's Responses to Request for Admissions
5. Plaintiff's Interrogatories to Defendant Aceves
6. Defendant Aceves' Responses to interrogatories
7. Plaintiff's Interrogatories to Defendant Hernandez
8. Defendant Hernandez's Responses to Interrogatories
9. Plaintiff's Request for Production of Documents as to all Defendants and their respective responses
10. Plaintiff Request for Admissions as to Defendant Aceves
11. Defendant Aceves Response to Request for Admissions
12. Copies. of the Inmate/Parolee Appeal Form 902 file before before the incident of May 10, 2013
13. Copies of State Parole Manual and Regulations regarding parole searches.
14. Copies of photos of the interior of the residence.

**Defendants' Exhibits**

1. Memorandum from R. Ambroselli to Regional Parole Administrators, entitled "Effective Supervision Strategies," dated September 30, 2009.
2. Excerpts from Plaintiff's original complaint (ECF No. 1).
3. Excerpts from Plaintiff's second amended complaint (ECF No. 8.)
4. Defendant Aguilera's Interrogatories to Plaintiff, Set One.

1.     5.     Plaintiff's responses to Defendant Aguilera's Interrogatories, Set One.

2.     6.     Defendant Aguilera's Requests for Admissions, Set One.

3.     7.     Plaintiff's responses to Defendant Aguilera's Requests for Admissions, Set One.

4.     8.     Defendant Aceves's Interrogatories to Plaintiff, Set One.

5.     9.     Plaintiff's responses to Defendant Aceves's Interrogatories, Set One.

6.     10.     Defendant Aceves's Requests for Admissions, Set One.

7.     11.     Plaintiff's responses to Defendant Aceves's Requests for Admissions, Set One.

Any of the exhibits identified herein that have not been provided to the opponent, **SHALL** be provided via e-mail or fax on or before **October 9, 2015**.[4] On or before **October 16, 2015**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examining each other's exhibits.

1. At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits. In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist. <u>Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference.</u>

2. At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence. These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above. Joint exhibits **SHALL** be admitted into without further foundation.

All Joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.). Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The Parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document

---

[4] Mr. Delgado indicated that he does not have the parole regulations upon which Mr. Whitfield will rely or the copies of the photos. Thus, Mr. Whitfield will need to provide copies of these by the deadline set forth here.

1  is offered which is not fully legible, the Court may exclude it from evidence.

2      Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits.
3  The index shall consist of a column for the exhibit number, one for a description of the exhibit and one
4  column entitled "Admitted in Evidence" (as shown in the example below).

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|

8      3.    As to any exhibit which is not a joint exhibit but to which there is no objection to its
9  introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be
10 indexed as such on the index of the offering party.  Such exhibits will be admitted upon introduction
11 and motion of the party, without further foundation.

12     4.    Each exhibit binder shall contain an index which is placed in the binder before the
13 exhibits.  Each index shall consist of the exhibit number, the description of the exhibit and the three
14 columns as shown in the example below.

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

18     5.    On the index, as to exhibits to which the only objection is a lack of foundation, counsel
19 will place a mark under the column heading entitled "Admissible but for Foundation."

20     6.    On the index, as to exhibits to which there are objections to admissibility that are not
21 based solely on a lack of foundation, counsel will place a mark under the column heading entitled
22 "Other Objections."

23     After the exhibit conference, Plaintiff and counsel for the defendants **SHALL** develop four
24 complete, legible sets of exhibits.  The parties **SHALL** deliver three sets of their exhibit binders to the
25 Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **November 30, 2015**.
26 Counsel **SHALL** determine which of them will also provide three sets of the joint exhibits to the
27 Courtroom Clerk.

28     7.    The Parties **SHALL** number each page of any exhibit exceeding one page in length.

**K.     DISCOVERY DOCUMENTS**

The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

**Plaintiff anticipates offering the following discovery documents at trial**:

1. Plaintiff's Interrogatories to Defendant Aguilera
2. Defendant Aguilera's Responses to Plaintiff's Interrogatories
3. Plaintiff's Request for Admissions to Defendant Aguilera
4. Defendant Aguilera's Responses to Request for Admissions
5. Plaintiff's Interrogatories to Defendant Aceves
6. Defendant Aceves' Responses to interrogatories
7. Plaintiff's Interrogatories to Defendant Hernandez
8. Defendant Hernandez's Responses to Interrogatories
9. Plaintiff's Request for Production of Documents as to all Defendants and their respective responses
10. Plaintiff Request for Admissions as to Defendant Aceves
11. Defendant Aceves Response to Request for Admissions

**Defendant anticipates offering the following discovery documents at trial**:

1. Defendant Aguilera's Interrogatories to Plaintiff, Set One.
2. Plaintiff's responses to Defendant Aguilera's Interrogatories, Set One.
3. Defendant Aguilera's Requests for Admissions, Set One.
4. Plaintiff's responses to Defendant Aguilera's Requests for Admissions, Set One.
5. Defendant Aceves's Interrogatories to Plaintiff, Set One.
6. Plaintiff's responses to Defendant Aceves's Interrogatories, Set One.
7. Defendant Aceves's Requests for Admissions, Set One.

       8.      Plaintiff's responses to Defendant Aceves's Requests for Admissions, Set One.

**L.    FURTHER DISCOVERY OR MOTIONS**

No further discovery is sought by either party.

**M.    MOTIONS IN LIMINE**

Any party may file motions in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Id.*

**In advance of filing any motion in limine, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine. Along with their motions in limine, the parties SHALL file a certification demonstrating counsel have in good faith met and conferred and attempted to resolve the dispute. Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions in limine must be filed with the Court by **October 30, 2015.** The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party, and filed with the Court by **November 13, 2015**. The Court sets a hearing on the motions in limine on **November 23, 2015,** at 10:00 a.m. Appearances via Courtcall are authorized.

The parties are reminded they may still object to the introduction of evidence during trial.

**N.    STIPULATIONS**

The parties stipulate that copies may be used in place of originals.

**O.    AMENDMENTS/ DISMISSALS**

None at this time.

**P.    SETTLEMENT NEGOTIATIONS**

The parties have discussed settlement in the past but the Defendants are not currently amenable

to settlement.

**Q.   AGREED STATEMENT**

None

**R.   SEPARATE TRIAL OF ISSUES**

None.

**S.   APPOINTMENT OF IMPARTIAL EXPERTS**

None requested.

**T.   ATTORNEYS' FEES**

If successful at trial, Plaintiff will be seeking attorney fees pursuant to 29 USC §§ 626 and 216 as well as Cal. Gov't Code § 12965(b).  (Doc. 52 at 21.)

**U.   TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **December 7, 2015**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the United States Courthouse, 510 19th Street, Bakersfield, California.  Trial is expected to last no longer than 2 days.

**V.   TRIAL PREPARATION AND SUBMISSIONS**

**1.   Joint statement of the case**

The parties submitted a joint statement of the case.  However, the statement contains information not needed in the statement and was unclear.  Thus, the Court has amended the statement to read:

> This case arises from a search that occurred on May 10, 2013, at the Bakersfield home where Mr. Whitfield rented a room. Also living in the home was the homeowner, Shirley Wells, and her brother, Eddie Wells.  Eddie Wells was on parole at the time.
>
> On the day of the search, Parole Agents Aguilera and Aceves went to the home to conduct a random search of Eddie Wells' living area.  Mr. Whitfield was present when Parole Agents Aguilera and Aceves arrived.  As part of the search, Aguilera and Aceves asked Mr. Whitfield if they could look inside his bedroom.
>
> According to Mr. Whitfield, Parole Agent Aguilera demanded entry into his bedroom, and he only agreed out of fear that he could be arrested if he objected.  According to Parole Agents Aguilera and Aceves, when they asked to look inside the bedroom, Mr. Whitfield agreed and let them do it without any objection or delay. The parties dispute how long the two agents were in Mr. Whitfield's bedroom, and whether they were there with his consent.

Any objections to this joint statement may be made, as set forth below, to the pretrial order within 10

days.

### 2. Trial Briefs

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **November 30, 2015.**

### 2. Jury Voir Dire

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **November 30, 2015.**

### 3. Jury Instructions & Verdict Form

The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than **November 6, 2015.** The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than **November 20, 2015**. At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **November 30, 2015**, and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than **November 30, 2015,** and identify such as the disputed jury instructions and verdict forms.  At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting

the instruction.  Each instruction SHALL be numbered.

**W.      OBJECTIONS TO PRETRIAL ORDER**

Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

**X.      MISCELLANEOUS MATTERS**

None.

**Y.      COMPLIANCE**

Strict compliance with this order and its requirements is mandatory.  All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

IT IS SO ORDERED.

Dated:   **October 1, 2015**                              **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE